Catherine **MILNE**, Appellant,

v.

**DELAWARE DEPARTMENT OF HEALTH AND SOCIAL SERVICES, DIVISION OF SOCIAL SERVICES, Appellee.**

Civil Action No. 95A–03–002.

Superior Court of Delaware, New Castle County.

Submitted Aug. 8, 1995.
Decided Dec. 14, 1995.

David J. Ferry, Jr., of Ferry, Joseph & Fink, P.A., Wilmington, for appellant.

James F. Kelleher, Department of Justice, Wilmington, for appellee.

## OPINION

GEBELEIN, Judge.

This is an appeal by Supportive Care Services, Inc., as the attorney in fact of Catherine Milne, ("Appellant") of a decision by a Hearing Officer of the Delaware Department of Health and Social Services, Division of Social Services. The Hearing Officer denied Appellant Medicaid nursing home benefits for the months of January, March and May of 1994 as a result of excess resources. Upon consideration of the record in this case and the briefs filed by the parties, the Court reverses and remands this case to the Division of Social Services for review consistent with this Court's opinion.

## I. STATEMENT OF FACTS

Due to poor health, Appellant entered a nursing home in 1988. At that time she designated Supportive Care Services, Inc. her agent with regards to both routine financial matters and the sale of her home.

In January of 1994, Eric Merlino of Supportive Care Services, Inc., on behalf of Appellant, filed an application with the Delaware Department of Health and Social Services, Division of Social Services ("DSS") requesting payment of Appellant's nursing home fees as of December 3, 1993, the date when her resources, two (2) bank accounts, fell below the $2,000.00 amount at which an applicant becomes eligible to receive Medicaid. In determining Appellant's available resources, the DSS worker added the balance in Appellant's savings account to the closing balance in her checking account, and concluded that they exceeded the $2,000.00 limit for the months of January, March and May of 1994. As a result, the DSS worker denied Appellant's application for Medicaid for the months in question.

On August 16, 1994, Appellant received written notice from DSS indicating that her application for Medicaid was approved as of June 1, 1994. However, it appears from the Hearing Record that the DSS worker assigned to the case later determined that Appellant was to receive Medicaid as of December of 1993 except for the months of January, March and May of 1994, for which it was determined that Appellant had funds over $2,000.00 and thus was ineligible as a result of her excess funds. Apparently, DSS did not provide Appellant with written notice of the denial of Medicaid benefits for January, March and May of 1994.

On September 16, 1994, Eric Merlino filed a request with DSS for a fair hearing on Appellant's behalf asserting that Appellant should be eligible for Medicaid commencing in December of 1993. At the hearing, which was held on January 25, 1995, Appellant asserted that in determining her Medicaid eligibility DSS incorrectly calculated her available resources, and as a result she was found ineligible for January, March and May of 1994. The Hearing Officer concluded that DSS correctly determined Appellant's available resources and that even if some other "alternate resource evaluation were to be applied," the information offered by Appellant had not been shown to be reliable nor had it been provided to the DSS worker

during the application process. Appellant appeals the Hearing Officer's decision.

## II. STANDARD OF REVIEW

The Court's authority to review DSS decisions is granted pursuant to 31 *Del.C.* § 520 (1985) which provides in pertinent part:

Any applicant for or recipient of public assistance benefits under this chapter or Chapter 6 of this title against whom an administrative hearing decision has been decided may appeal such decision to the Superior Court if the decision would result in financial harm to the appellant. The appeal shall be filed within 30 days of the day of the final administrative decision.... The appeal shall be on the record without a trial de novo. The Court shall decide all relevant questions and all other matters involved, and shall sustain any factual findings of the administrative hearing decision that are supported by substantial evidence on the record as a whole....

As Appellant clearly has suffered financial harm as a result of the Hearing Officer's decision, the filing of her appeal with this Court is appropriate.

This Court's review of DSS decisions is limited to an "examination of the record for substantial evidence to support the findings of fact made by the Hearing Officer and the absence of any errors of law." *Bowden v. Delaware Dep't of Health & Social Servs., Div. of Social Servs.*, Del.Super., C.A. No. 92A–08–1, Graves, J. (Aug. 25, 1993) (Letter Op.) at 4, *aff'd sub nom. Parsons v. Delaware Dep't of Health & Social Servs., Division of Social Servs.*, Del.Supr., 642 A.2d 837, *and cert. denied*, —— U.S. ——, 115 S.Ct. 203, 130 L.Ed.2d 133 (1994). Furthermore, as noted by the *Bowden* Court:

[o]ur review is necessarily aimed at the potential for misapplication of governing law by a State when determining the qualifications of applicants for assistance through the Medicaid program. Only if the procedure of eligibility determination

is legally sound do we proceed to the question of the sufficiency of evidence to support the decision.

*Id.* Thus, this Court begins its analysis by determining whether the hearing officer committed any legal error in making his decision.

## III. DISCUSSION

In order to determine if the Hearing Officer based his decision on a correct interpretation of the applicable law, it is necessary to set out the boundaries under which the Medicaid system operates. Basically, the Social Security system is divided into three tiers which are organized as follows:

The first tier of the system is the provision of federal funds to States that finance medical care for its categorically needy citizens. This group of recipients was restructured in 1972 through consolidation under the Supplemental Security Income for the Aged, Blind, and Disabled ("SSI"). The federal government also mandated the eligibility requirements for participation in the SSI program, and ruled that anyone eligible to participate in this program was automatically qualified to receive Medicaid benefits. In an attempt to prevent the destitution of participating states, the federal government created a second tier which allowed states to offer a s[ection] 209(b) option, permitting them to offer Medicaid coverage only to those persons who would have qualified for benefits under the system employed prior to the passage of the 1972 adjustments. Also, as a third tier, states wishing to enlarge, rather than restrict, their program of Medicaid assistance could do so by implementing an optional categorically needy class.[1]

*Bowden, supra,* at 4–5 (citations omitted).

The "[e]ligibility criteria for the SSI program are controlled by" federal regulations which mandate uniform requirements for those states electing to participate in the SSI program. *Id.* at 5. In addition, as a result of the fact that SSI recipients automatically

---

**1.** It is worth noting that Delaware has elected to be "classified as an SSI state with additional coverage to be provided under the optional categorically needy provision." *Bowden, supra,* at 7. However, Delaware has not elected to provide a "medically needy program." State of Delaware Department of Health and Social Services, Division of Social Services Medical Assistance Program (Medicaid) Manual § 111, at 100–14 (1994) ("DSSM").

receive Medicaid, the federal government also sets out the criteria under which they may participate. *Id.* at 6. However, the states which elect to participate in the "optional categorically needy program" have more flexibility in establishing eligibility criteria. *Id.* Thus, as long as the state's criteria are "at least as restrictive as those used by the federal government," the regulations are valid. *Id.*

In Delaware, the Medicaid program is generally overseen by the Department of Health and Social Services, but administered by DSS. State of Delaware Department of Health and Social Services, Division of Social Services Medical Assistance Program (Medicaid) Manual, § 110, at 100–7 (1994) ("DSSM"). Long term nursing home care such as that sought by Appellant may be paid for by the Medicaid program provided an applicant satisfies certain medical and financial criteria. DSSM, *supra*, § 400, at 400–1. In the instant case, the parties do not dispute that Appellant is medically eligible. Rather, the focus of the dispute concerns the financial eligibility requirement.

In order for Appellant to be financially eligible to receive Medicaid as an individual, her monthly income must be at or below "230% of SSI benefits." DSSM, *supra*, § 410.11, at 400–8a. According to Appellant, this means that Appellant's income must "be at or below $1,018.20." (Appellant's Opening Br. at 2). Available income "includes anything received by the individual, in cash or in kind, that can be used to meet needs for food, clothing or shelter." DSSM, *supra*, § 410.11, at 400–6. There is no dispute that Appellant's income is at or below the required amount.

In addition to the income requirement, in order to be financially eligible to receive Medicaid, Appellant's monthly resources must be $2,000.00 or less. DSSM, *supra*, § 410.12, at 400–9. Under the provisions of the DSSM, resources are defined as either "liquid" or "non-liquid."[2] *Id.* Once an applicant has been determined to be eligible to receive Medicaid benefits, their resources

may never exceed the $2,000.00 limit without a corresponding loss of Medicaid benefits for the month in which they had excess resources. Furthermore, an applicant's resources which "are in effect on the first moment of the first day of a calendar month are considered as available for the entire month." DSSM, *supra*, § 410.12, at 400–9.

In the instant case, the dispute of law arose over the methodology employed by the DSS worker to determine Appellant's available resources. Appellant's argument may be briefly summarized as follows: First, the DSS worker employed an incorrect methodology in determining Appellant's resources. Second, DSSM § 410.12, on which the DSS worker relied in making her determination as to Appellant's available resources, does not provide DSS worker's with the appropriate methodology to be used in computing a Medicaid applicant's resources. Third, the favored method of accurately determining Appellant's available resources would be for the DSS worker to take into account those checks that had been written on the Appellant's account, but which remained outstanding when the bank issued Appellant's checking account statement. In the Appellant's view, this information is most accurately set out in the checkbook ledger maintained by Supportive Care Services, Inc., on Appellant's behalf. Fourth, Appellant contends that 42 C.F.R. § 435.601 (1994) "clearly applies" the SSI regulations, setting out the appropriate methodologies to be employed in determining an applicant's income and resources, to the Medicaid program. Fifth, a clear reading of the SSI regulations set out by the Social Security Administration ("SSA") in its Program Operations Manual System (POMS manual) indicates a preference for the Appellant's own records rather than bank records. Finally, if the DSS worker or the Hearing Officer had in fact employed Appellant's own records in their determination, then Appellant would not have been over-resourced for the months in question.

---

**2.** The DSSM defines "liquid resources as funds or other property that can be converted to cash within 20 working days" and "non-liquid resources [as] assets that require more than 20 working days to convert to cash." DSSM, *supra*, § 410.12, at 400–9.

The Division's ("Appellee") Answering Brief neglects to address the majority of the issues raised by Appellant. In fact, a thorough review of the Appellee's brief leaves this Court with the impression that Appellee concedes that the Hearing Officer incorrectly determined that the SSI regulations in the POMS manual do not apply to Delaware's Medicaid program. Throughout the Appellee's answering brief, reference is made to the POMS manual and what is considered "competent evidence" under its provisions. Furthermore, the Appellee notes that if the Appellant had produced "pass books, check [sic], deposit slips [or] the record of the account in the individual's possession.... the Hearing Officer might have arrived at a different conclusion." (Appellee's Ans. Br. at 4).

Despite the fact that this Court infers from Appellee's Answering Brief that Appellee concedes that the SSI regulations set out in the POMS manual apply to Delaware's Medicaid program, the Court will determine whether the regulations promulgated in the POMS manual are applicable. Thus, in reviewing whether the Hearing Officer employed the appropriate law to Appellant's Medicaid application, there are several issues before this Court. First, does § 410.12 of the DSSM provide DSS workers with the methodology for determining a Medicaid applicant's available resources? Second, if not, do the SSI regulations set out in the POMS manual apply to Delaware's Medicaid program?

According to her hearing testimony, the DSS worker made her determination that Appellant was over-resourced for January, March and May of 1994, based on the guidelines set out in DSSM § 410.12. (Hr'g Tr. at 5). She did not request Appellant's own records because they are not considered "verification." (Hr'g Tr. at 4). The Hearing Officer affirmed the decision of the DSS worker based on DSSM § 410.12.

Appellant points out, and the Court agrees, that the Medicaid Manual neglects to provide guidance for DSS workers as to that documentation which is required in order to correctly determine a Medicaid applicant's resources. From the testimony of the Med-

icaid Long Term Care Supervisor, it appears that "in Medicaid," it is not a normal procedure for the workers to use checkbook registers. (Hr'g Tr. at 10). Rather, the workers "use the hard documentation from the bank [to determine available resources].... the reason being that the bank statements reflect actual balances that are available." *Id.* Despite the fact that this procedure may be common practice among DSS workers, there appears to be no support in DSSM § 410.12 justifying the practice.

Thus, as § 410.12 of the DSSM does not provide the DSS workers with the methodology for determining a Medicaid applicant's available resources, the Court looks to 42 C.F.R. § 435.601 to determine if it provides any guidance. The federal regulation in question provides that "'cash assistance financial methodologies' refers to the income and resources methodologies of the AFDC, SSI, or State supplement programs, *or*, for aged, blind and disabled individuals in States that use more restrictive criteria than SSI, the methodologies established in accordance with the requirements of [§§] 435.121 and 435.230." 42 C.F.R. § 435.601(a) (emphasis added). In his decision, the Hearing Officer found that 42 C.F.R. § 435.601 only applies to states which operate 209(b) Medicaid programs. Thus, under the Hearing Officer's interpretation of § 435.601 since Delaware is not a 209(b) state, § 435.601 does not apply to the Delaware Medicaid program. (Hr'g Officer dec. at 2).

The Hearing Officer's determination that § 435.601 applies in "states which operate 209(b) Medicaid Programs" is an incorrect interpretation of the regulation. The regulation provides that the "cash assistance financial methodologies" refers either to the methodologies of the AFDC, SSI, or state supplement programs *or* it refers to the methodologies set out in §§ 435.121 and 435.230 for those states that employ more restrictive criteria than SSI. The states that employ more restrictive criteria than SSI are referred to as 209(b) states. Under a clear reading of the regulation, if a state is a 209(b) state, then it must employ the methodologies set out in §§ 435.121 and 435.230. All other states must use the methodologies

of the AFDC, SSI or state supplement programs.

The Hearing Officer was correct in concluding that Delaware has not elected to be classified as a 209(b) state. *See Bowden, supra,* at 5 n. 5; *see also* DSSM, *supra,* § 111, at 100–10. Thus, under the Court's interpretation of the regulation in question, as Delaware is not a 209(b) state, it must apply the cash assistance financial methodologies of the AFDC, SSI or state supplement program to Delaware's Medicaid program, i.e. the POMS Manual. Even if 42 C.F.R. § 435.601 did not specifically apply the regulations promulgated in the POMS manual to the Medicaid program, there is sufficient support pursuant to Delaware case law and the DSSM itself which warrant applying the POMS regulations to Delaware's Medicaid program.

The Hearing Officer incorrectly relied upon *Andrews v. Division of Economic Servs.,* Del.Super., C.A. No. 86A–FE3, Chandler, J. (Jan. 14, 1987) (Letter Op.), as support for the proposition that the SSI regulations promulgated in the POMS manual are not published and thus are not binding on DSS. (Hr'g Officer dec. at 2–3). In *Andrews,* after a ninety-one year old nursing home resident's ("claimant") Medicaid benefits were terminated as a result of the Division of Economic Services' interpretation of a SSI regulation in the POMS manual, she claimed that the SSI regulations in the POMS manual did not apply to her. *Andrews, supra,* at 3. In support of this argument, she cited *Whaley v. Schweiker,* 663 F.2d 871 (9th Cir.1981), in which the court held that it was not bound by an interpretation of a "Social Security Claims Manual," as such decisions are not "subject to the procedural protections inherent in the drafting of regulations." *Id.* at 873. In *Whaley,* the court addressed the issue of whether the benefits a disabled veteran received on his children's behalf comprised income such that he was disqualified from receiving SSI benefits. *Id.* at 872. Despite noting that "[The Manual] has no legal force, and it does not bind the SSA," the *Whaley* Court determined that as the statutory interpretation in question "undermine[d] the congressional com-

mitment to aid needy veterans and their families" it does not need to be followed. *Id.* at 875.

In addressing the claimant's argument, the court in *Andrews* made the general observation that, "DES follows the Supplemental Security Income (SSI) procedures established by the [SSA] for administering Medicaid. They are printed, for convenience, in the POMS manual." *Andrews, supra,* at 1–2. Furthermore, in rejecting Andrews' argument, the court stated that:

Appellants are correct that the POMS relied on by DES is from an office manual and as such is not binding on this Court as formal regulations promulgated by the Secretary would be. The Court in *Whaley* held that as the claims manual was not subject to the same procedural safeguards as regulations, then they were not binding and the Court need not follow them. The reason the *Whaley* Court chose not to follow the manual, however, was because it "did violence" to Congress' intent to aid the needy.

*Andrews, supra,* at 3. Despite remanding the case to DES in order for it to review its interpretation of the regulations, the *Andrews'* court specifically stated that the SSI regulations are applicable to Delaware's Medicaid program. Thus, when this Court reads *Andrews* and *Whaley* in conjunction, it interprets them to stand for the legal proposition that provided the "SSI regulations do not controvert congressional intent," they are applicable to the Delaware Medicaid program. *Id.* In situations where the SSI regulations do "controvert congressional intent," then clearly, they are not "binding and the Court need not follow them." *Andrews, supra,* at 3.

In addition, the DSSM itself supports the proposition that the SSI regulations set out in the POMS manual apply to Delaware's Medicaid program. A review of the text of the DSSM reveals references to the POMS manual which direct the reader's attention to specific sections of the POMS manual. *See, e.g.,* DSSM, *supra,* § 410.12 at 400–9.

Finally, it appears to the Court from Appellee's brief that Appellee tacitly concedes that, despite the conclusion of the Hearing

Officer, the SSI regulations set out in the POMS manual should have been applied in the instant case.

Based on the foregoing, the Court finds that under the facts of this case, the SSI regulations set out in the POMS manual should have been employed in determining Appellant's eligibility to receive Medicaid benefits. The Court acknowledges that if the POMS manual regulations conflicted with the rules and regulations set out in the DSSM, then disregarding the POMS regulations would be appropriate. However, in the instant case, the DSSM does not provide its workers with the methodology to be employed in determining an applicant's available resources; and thus, potential conflict between the rules and regulations set out in the DSSM and the POMS manual is not an issue.

The Court concludes, therefore, that the Hearing Officer committed an error of law in determining that the SSI regulations set out in the POMS manual did not apply to Delaware's Medicaid program. As a result of the Hearing Officer's determination that the POMS manual does not apply to Delaware's Medicaid program, this Court reverses and remands in order that DSS may reevaluate whether Appellant is eligible to receive Med-icaid nursing home benefits for January, March and May of 1994, based on its application of the appropriate methodology set forth in the POMS manual for determining available resources, to the facts of Appellant's case.

As the Court has determined that the Hearing Officer committed an error of law, and reverses and remands on that ground, it is not necessary for the Court to further determine whether there was "substantial evidence to support the findings of fact" made by the Hearing Officer.

## IV. CONCLUSION

Based on the foregoing, the February 1, 1995, decision of the Division of Social Services Hearing Officer, denying Appellant's eligibility for Medicaid nursing home benefits for the months of January, March and May of 1994, is **REVERSED** and **REMANDED.**